Case number 16-4193 Keith Goodwin et al. v. Summit County Ohio et al. Oral argument not to exceed 15 minutes per side. Keith Prytel for the appellant you may proceed. Good morning members of the panel. I am Keith Prytel from Kassner, Westman & Wilkins and I represent Keith Heating & Cooling and Mr. Keith Goodwin who is in the courtroom with us today. I have reserved three minutes of my time for rebuttal. Before the court is a 12B dismissal of a 1983 civil rights action. This court has repeatedly said that it will closely scrutinize 12B dismissals of civil rights cases. All the issues before the court are subject to de novo review. So we have a fresh review by the panel of the district court's findings in dismissal of the case. And I want to start my discussion today with the res judicata application by the district court. It is horn book law that when you are trying to determine the preclusive effect of a state court judgment in federal court you look at the state law principles. That's the Myra case from the United States Supreme Court. And in Ohio it has made itself very clear that we follow for purposes of the bar relating to res judicata the restatement of the law of judgments. That's Parkman. Parkman versus Graba. Matter of fact there's two reported Ohio appellate cases that say the same proposition and that the orderly delineation of res judicata for a litigant defending party, which is different than a litigant bringing party, is that under the compulsory permissive counterclaim rule of the state of Ohio. That's how we deliver res judicata for a litigant defending party. And as this court knows that when it's applying and trying to decipher what is the law in the state of Ohio it turns first to, hey, has the Supreme Court of Ohio spoken on this or it has. It says follow the restatement, second of judgments. And more importantly we have two district courts, they weren't cited in the, we have two appellate courts, they weren't cited in the district court's opinion that have said the orderly delineation for a litigant defending party for res judicata purposes is the Rule 13 permissive compulsory counterclaim test that's in the Ohio rules. So what does restatement of judgment say? The restatement of judgment is very clear. It's in section 22 of the restatement, second of judgment, that says where a party may interpose a counterclaim but does not, he is not precluded from maintaining an action on that claim except if it falls within the state's compulsory counterclaim rule. Comment D to that same section says that where the same facts constitute an affirmative defense and a counterclaim and the defendant sets it up as a defense but not a counterclaim, the doctrine of merger, i.e. bar, will not prevent the maintenance of a second claim. So if you apply that law to what went on here, there should have been no bar applied to the subsequent constitutional claims that were brought in the federal court as a result of the state court action. The district court applied a transaction or occurrence test rather than the logical relationship test when it started to go through its analysis about what is the compulsory counterclaim rule in Ohio. And that's important, that distinction and that, I believe, error is important because this court has already defined what does the transaction or occurrence mean within the compulsory permissive counterclaim rule of law under Federal Rule 13, which is identically worded to Ohio Rule 13. Matter of fact, in the Reddick decision, which is cited in the district court, that case from the Ohio Supreme Court is replete with references to Federal Civil Procedure 13, Wright and Miller, federal decisions so that you would think that the court would borrow, and it has borrowed, federal rules to decipher what is a transaction or occurrence in a logical relationship. So we have the Baumann v. Bank of America case, which is cited in our brief. It's a reported decision from this case in 2015, and it goes through what does that logical relationship test mean. And it clearly said that whether the issues of law and fact raised by the claims are largely the same, and whether substantially the same evidence would support or refute both claims, is the test. What the district court applied to get to the logical relationship test, and this is at page 850 of its opinion and award, which is docket number 45, it called, hey, as long as things have same common matters to them, that's the words used by the district court, or as long as they involve the same basic controversy, those are the words of the court, then they involve the same transaction or occurrence. Well, that's not the law. Why isn't this essentially a compulsory counterclaim under Ohio law? What's your best case or argument for that? Okay. There's two answers to that one, Judge Moore, and I thank you for that question. The first answer is it doesn't meet the transaction or occurrence test under Baumann, because certainly when you're bringing in like consumer actions, such as that is brought in the state court proceedings, they have nothing to do with a civil rights equal protection due process counterclaim. Matter of fact, the elements of that transaction is in the statute itself. It's in the ordinance of the county itself about what they need to prove unfair or deceptive trade practices. But there's a second kind of more important issue as to your question, why isn't there a bar here? And that relates to something that the district court did when it did its analysis of the occurrence, and we do believe they used the wrong test on the logical relationship test, and that is it only looked at that from the standpoint of the consumer affairs action that was brought in state court, and did not look at it all from the standpoint of the separate permitting action that was brought in the state court. And why is that important? And I can tell you it's at page 851 of the district court's opinion where it talks about plain preclusion, and it's centered around attempts to enforce its consumer practices ordinance. That's the only one it mentions. Then you go on to the next page at 851, and the court in its conclusion after application of what it thought were the proper elements of Rule 13 said, the actions giving rise to the federal claims here, the county's investigation and enforcement of its consumer sales practice ordinance occurred prior to the filing of the state court. So it only looked at that from the consumer affairs ordinance standpoint. Why is the permitting the separate claim important? It was pled as a separate claim. It's in paragraphs 44 through 52, 53 of the complaint, the first amended complaint, which is document 35.1, is that there was a clear and certain equal protection of one claim that was pled with respect to the permitting process. And let's revisit the facts about what went on there. Summit County had a chief building inspector who sat on the board of the Air Conditioning Contractors Association, Canton-Akron Chapter. These are the competitors to Keith Heating and Cooling. He's supposed to be the policeman of the permitting process, and he's sitting on the board of directors of that competitor organization. And what did we plead? And as a matter of fact, I'll tell you why it goes further than what we just pled, but what did we plead is that none of those contractors that operated in Summit County pulled permits, were fined for not pulling permits, paid penalties for not paying their fines on their permits, or were subject to enforcement action. Could you have raised these claims in the state court proceeding? Well, the answer to that question is absolutely not, and I'll tell you why, Judge Moore. I think we have a right to presume that a county, or in any civil rights setting, a city, complies with its laws. That doesn't mean you couldn't have raised those claims in the state proceedings. Well, I can only raise them if I knew them, and I had the evidence to back them up. If you knew them, did you raise these matters as an affirmative defense in the state proceedings? We raised equal protection and due process in general as affirmative defenses in the state court proceedings. So then you had to know about them? I want to tell you why. How can you raise them as affirmative defenses and not know them enough for a counterclaim? Well, first of all, the restatement is very clear that where the same facts constitute an affirmative defense, and a counterclaim and defendant sets it up as a defense but not a counterclaim, the doctrine of merger or bar will not attach. Okay, so... To answer your question, let me answer your question, because you are asking a very... I have another question, but go on, yeah. You're asking a very, very important question, is how could I have not known that? How could I have known that the head of the Building Standards Department, who does the permitting enforcement, sat on the board of the competitors of Keith Heating and Cooling? How could I know, at the time I answer, because that's the pinpoint time, isn't it, under Rule 13, there's a demarcation of time, it says, it's only if you know it at the time you finally answer. No, but you knew enough to make an affirmative defense. Right, but I did not know enough to bring a compulsory counterclaim, which are two different matters, and the restatement says they're two different matters. Yeah, so you are relying on the restatement, and is there an Ohio case that relies on that section of the restatement so that we know that Ohio has adopted that section of the... Rava versus Parkman. Rava... Rava versus Parkman, Judge Moore, is the seminal Ohio Supreme Court case where there was some in the law in Ohio at that point in time about where they wanted to go with res judicata in the bar, and they said, now this was from the offensive end, this was from the litigate bringing end, but they didn't draw lines and say, hey, we're only going to adopt a restatement for litigate bringing claims, but not litigate defending claims. Res judicata is determined in the state of Ohio by the restatement of judgments. But even if you carry the analysis further, there was a missed cause of action here, okay? There was no analysis applied by the district court to the separate permit enforcement action, only to the consumer affairs action where it said, hey, Mr. Prytel, you could have known or should have known about these facts. So I'm spinning it back to the building department enforcement action and the permitting process where not only was it everybody got a free pass in John Libriola's world of the contractors of the board he sat on, which my client was not a member of, okay, and so he didn't get a free pass and he's the only one who didn't get a free pass on the permitting. There were people in the building standards department that moonlighted as HVAC installers and guess what they didn't do? They didn't pull permits, they didn't get fined, they didn't have to pay penalties, and they had no enforcement actions brought against them. Again, Judge Moore, I could not have known that at the time I filed the answer. We only found that out in discovery in the state court lawsuit. I could not possibly have known that to plead that as a separate class of one claim. Why couldn't you have amended? Well, so that goes back to what is a compulsory counterclaim, Judge? The compulsory counterclaim in Ohio is defined by a certain point in time. It says at the time you file your answer, anything that happens afterwards is permissive. Permissive means you can bring it or you can choose not to bring it. I certainly could have amended. Maybe I could have. The question becomes was I required by law to amend it? And under the rule which says the demarcation line is at the time you file that answer, that's it. Anything that happens afterward is permissive counterclaim, then that does not answer the question as to could I have amended it. I know my time is down to seven seconds and I do have some other claims I'd like to address. I think at this time I will sit down, but I do plan on using my three minutes to address the other claims. Well, you can only do that if your opponent has addressed them. Yes, I understand. It's rebuttal. Thank you, Judge. Thank you. This is Grava V. Parkman, Health Council. May it please the Court, Stephen Funk. I will answer your question, Your Honor. Stephen Funk of Redstone Andrews on behalf of Appellee Summit County. To answer your question directly, Grava V. Parkman is actually a 1995 Supreme Court case that addressed the question of whether res judicata applies to administrative proceedings. So it actually doesn't address the issues. It does address the general four parts. It has a paragraph that says we expressly adhere to the modern application of the doctrine of res judicata stated in the restatement of the law second of judgment. So I think that's what he was saying. Generally. But it doesn't address the issue that we're talking about here. And let me just begin by saying that there are actually numerous legal reasons why this case should be dismissed, res judicata being the first one. But in addition to that, failure to seek just compensation in state court, no deprivation of a constitutionally protected interest, no denial of due process, substantive due process claim that they allege they admit is subsumed by their other claims, immunity, no Monell liability, statute of limitations, relation-backed doctrine, and others that we've all set forth in our brief. And here, the key thing is all the district court's rulings, and the district court gave a number of reasons for why she dismissed this case. They're all based upon Sixth Circuit precedent in Ohio law, and they should be affirmed. Let me also emphasize at the outset that they are not appealing the dismissal of their state law claims, and I say that in part because they argued in a reply brief that we somehow waived the issue of collateral estoppel, but the district court only relied on collateral estoppel to dismiss the state law claims. The federal law claims were dismissed based upon res judicata. And when it comes to res judicata, the trial court or the district court followed Sixth Circuit precedent. There are three cases we cited in our brief, Lisboa, Rondigo, and Carroll, which all involve a situation like this, where a defendant is sued in a state court civil enforcement action by a governmental entity, and they allege constitutional claims that arise out of or relate to that civil enforcement action. So those cases, all three of those cases deal with a situation like this. They all say that those arise from those same transactions or occurrences, and res judicata applies because those are all claims that could or should have been brought in the state court proceedings. But they did have to have those claims at the time of filing the answer, is that right? Well, I have two responses to that argument. First off is that this court has held in the toll test case, and that relied upon prior precedent, that res judicata is actually an independent defense from the compulsory counterclaim rule. So they are independent doctrines, and in fact, the four-part test that Grava V. Parkman cites, that this court has followed in Hapgood and all the cases since then, that four-part test applies to res judicata, regardless of whether you're a plaintiff or a defendant in the prior action. So if the four elements are met, res judicata applies. But secondly, we do submit that these are compulsory counterclaims under the compulsory counterclaim rule, and the district court found that as well. We argued that below, and the district court agreed that those were compulsory counterclaims. But my question was, don't you have to have those claims at the time that you filed the answer? I would, in order to fall within the compulsory counterclaim rule? Right. I would say that the difference between a permissive and a compulsory counterclaim is that the permissive counterclaim is defined as being not arising from the same transaction or occurrence. The compulsory counterclaims are claims that do arise from the same compulsory counterclaim occurrence. Now, the rule does reference that the claims that were not known but arose at the time of the filing of the pleading. But res judicata, and this court has multiple times, does include the opportunity to amend. And so the courts often will say, if you had the opportunity to amend the complaint, that also applies. And would we be applying Ohio law for this purpose, as opposed to some federal rules? Ohio law of res judicata. Yeah. That's right. Yeah. So what Ohio case would you point us to? Well, this case, Sixth Circuit, Lisboa, relied upon Ohio law. It did. It cited Ohio law. So Lisboa names a particular Ohio case that you rely on then? Right. Basically, the cases that deal with the definition of a transaction or occurrence. And they say very clearly, a case arising out of claims that arise and relate to a civil enforcement action. In that case, it was a nuisance abatement action filed by Cleveland Heights. Those are claims that arise from the same transaction occurrence and, in fact, were compulsory counterclaim. Yeah. But it's the timing question that I'm concerned about, not whether, at the moment, whether it's the same transaction or occurrence. Well, I'm relying on the toll test case that this court cited. And that cited other cases as well that talked about res judicata being an independent defense. But let me just go back to the second part of my answer, which is you actually made the point during their argument. These are absolutely compulsory counterclaims that arose prior to the date that they filed their answers. And the key parts of that is, particularly on the question of due process and equal protection, both of those were raised as affirmative defenses. And in the Rondigo case, which is the Sixth Circuit case, the exact same thing happened in that case. They alleged them as affirmative defenses, but didn't allege them as counterclaims. And the court said, obviously, then they are counterclaims. So I gather that your opponent's argument is that, as a result of discovery in the State case, it became more apparent that there was an equal protection claim, that they were being treated unfairly vis-a-vis all the others. So why would that not mean, under Ohio law, that they could bring a separate lawsuit? Well, it really goes to the question of, when did their 1983 claim accrue? And that's defined by federal law. And that is dealt with the question of notice. It's an objective inquiry as to when they would have been put on notice as to their need to assert their rights. In this situation, they're-  That's absolutely correct, Your Honor. There's no bar in terms of it being an administrative type of proceeding or anything like that. No. And the key thing on that is, what happened in this case was that they made an intentional and deliberate choice. They filed all of their claims. There was a state court proceeding filed. And they raised them as affirmative defenses. In fact, they argued equal protection, selective prosecution, and due process in their arguments below in their summary judgment motion. But at the same time, while that state court action was pending, they chose, instead of bringing their constitutional claims in the state court action, they filed them in federal court. The case was originally filed in January 2014, well before there was any final judgment. They filed all their claims in federal court. And the problem with that strategy was they ran into two issues. One is younger abstention makes it very clear that you can't go into a separate action when you've got a pending state court civil action. So at that time, the trial courts, the district courts, specifically found that they had the opportunity to bring their constitutional claims in the pending state court proceedings. So they were clearly put on notice that they had the ability to do that. At no time did they seek to amend their complaint to bring those claims into the state court proceeding, even though the federal court had specifically said that they could do that. And then what happens then is once a final judgment is rendered, race judicata now operates as a bar to their ability to bring them in a second court proceeding. So in those ways, really, race judicata and younger abstention work together to kind of prevent this very thing, where you basically are looking for a second by the apple by bringing claims after a final judgment's been rendered that could have been brought before. Mr. Prytel is, I think, arguing to us that more grievous conduct came to light for him, that folks were serving on the board and competitors were having other advantages that the county acquiesced in. I think that's the nature of his argument that I could not have brought this earlier. So what do you say? I would say that he clearly could have brought it earlier. And the reason why, Your Honor, is because it's the issue of when the cause of action accrues. So in any situation, once you put on notice that there is a violation under 1983, the cause of action accrues. Obviously, during the course of discovery, you may find out additional facts to support that claim. They get better proof. But that doesn't necessarily mean that the cause of action did not accrue. And here, and this is the key thing, particularly on the due process argument, this due process argument is completely meritless. They're suggesting that the county did not provide notice and opportunity to be heard when we, in fact, filed a complaint that requested, before any imposition of sanctions, requested sanctions and gave them an opportunity to be heard before an independent judicial officer with the right to discovery, the right to subpoena third party witnesses. So the only potential due process argument they could potentially have would be something that should have been given prior to filing the complaint in 2012. And if that's the case, they clearly would have known of that at the time the complaint was filed. But on the equal protection claim, the same principle applies. When they allege their answer, they specifically allege selective enforcement in their defense. So they were put on notice. They knew that they had a potential equal protection violation. And when you read the complaint, the original complaint in January 2014, their allegations all relate to alleged selective enforcement that occurred prior to the filing of the complaint in 2012. In fact, their whole premise is that they were treated differently because a complaint was filed against them and not against others. So they would have been aware of that when the complaint was filed in 2012. That's why their cause of action accrued. They knew it. And the final confirmation of that is that they, in fact, alleged an affirmative defense in their answer. The whole issue of whether these individuals are sued in their official capacities or now they want to sue them in their individual capacities. Yeah, thank you, Your Honor. That actually relates to whether the effort to amend the complaint in 2016 related back to the original case. So the key thing about that question is this is actually kind of a unique situation because what happened in this case was in their original complaint in the caption, they said sued in their official capacity. I then moved to dismiss all of the official capacity defendants on the grounds that the complaint was really just against the county. They did not respond to that argument in response to my 2014 motion to dismiss. So they effectively waived and abandoned those claims. The district court then looked at the pleadings, agreed with me that they had been sued in their official capacity only, and dismissed all of those defendants, even though she stayed the case otherwise against the county. So as of 2014, they were dismissed. Two years after that and 3 and 1 half years after the causes of action accrued, they sought leave to amend the pleadings. And the district court said, no, it's after the statute of limitations. And so the individual capacity claims did not relate back to the original complaint. And that decision was based upon Sixth Circuit precedent in the Lovelace case. But more importantly, they argue that it conflicts with Moore versus Hardiman. In Moore versus Hardiman, in response to a motion to dismiss, the plaintiff came back and said, no, I have sued them in their individual capacity. And then the court said, OK, in light of that fact, we're going to allow you to proceed. In this case, they did the exact opposite. And then the people were dismissed. So we think There was a statement in the complaint mentioning sued as individuals. So in the very beginning of the complaint, that says there's a vague reference to individual capacity. But this is a key thing. They never, in the body of the complaint or in the caption, identified any particular defendant as being sued in their individual capacity. It was just a vague reference. So when I came back and said, they haven't sued anybody in their individual capacity, they did not respond to that argument. That would have been the time. That would have been the time. Actually, it's so-and-so-and-so. And as the district court pointed out, after she dismissed them in 2014, they didn't come back with a motion for reconsideration or any kind of argument suggesting that they weren't. The only time that they did was after the statute of limitations had expired. So we don't think, actually, the court needs to reach that question. Because obviously, if the claims don't have any merit, it doesn't matter whether they're suing people in their individual or official capacity. But we think the district court was absolutely right that the individual capacity claims were filed after the statute of limitations. With my remaining time, I did want to address one thing. In their reply brief, they attempt to make accusations against us for somehow misrepresenting the record. And the portions of the brief that they cite, we not only accurately state the record, we cite the court to the specific pages of the hearing transcript and the lines of the hearing transcript that we're relying on. And one of those admissions was, in the course of the hearing transcript, the district court judge was specifically asking Mr. Prietel about this individual capacity argument. And ultimately, and these are the lines that we quoted in the brief, where the court says, but there was never anybody designated as being sued in their individual capacities. Mr. Prietel, yes. And if that's a pleading mistake on my part, I will take that, judge. So all we did was quote the judge's words and his words. And the same thing happened with respect to our description of the state court's rulings. I simply was quoting what the state court judge ruled. And we were absolutely accurately depicting the record. So I do want to make that clear. But ultimately, the record speaks for itself. The district court's ruling speaks for itself. We think the district court was correct in both applying race judicata and in dismissing the claims on the merits, as well as dismissing the state law claims which have not been appealed. And we ask the court to affirm the district court's rulings in the appellee's favor. Thank you. Thank you. Thank you. The Rondingo case that is cited by the county involves Michigan race judicata. Michigan does not have a compulsory or permissive counterclaim rule. Matter of fact, the Ohio Supreme Court has noted that in its application of race judicata and said it's all beside the point. In Lisboa, what had happened is that the nuisance law claim had been brought. And the recipient of that nuisance claim brought a claim saying, hey, this is all racially discriminatory. That was her counterclaim. She already brought it. Entered into a consent decree to shut down the club. And then after entering into that consent decree, tried to bring a 1983 action. And Judge Sutton correctly said, hey, that's common transaction or occurrence. And you knew of that at the time. You certainly knew of it at the time you filed your counterclaim in your first case. And Carroll doesn't even address the issues we're here debating. Nobody even raised this issue. In terms of this dual track race judicata, we know what the Ohio Supreme Court said. But more importantly, we know what intermediate appellate Ohio courts have said. Lewis v. Hardy and Cleveland v. AJ Rose, neither of which are cited by the district court, but which we did cite to the district court both said, the orderly dispensation of race judicata for litigant defending parties in the state of Ohio is rule 13. And I think the rule is that you follow intermediate Ohio appellate courts unless you're convinced that the Ohio Supreme Court would not follow those intermediate courts. Here, they work in tandem. He mentioned the fact that I filed a subsequent civil rights action in federal court. If you read this restatement of judgments, that's the precise interest protected as to litigant defending parties versus litigant bringing parties. When you're a litigant bringing party, what you don't want to happen is claim splitting. You don't want people to hold in their hip pocket a claim, lose, and then bring it out and say, I got another one for you. When you're the defendant. Under younger abstention and staying of the federal action, aren't you pretty much on notice that you should have everything that you can have decided in the state court action decided there? No, that's not what her younger ruling was. Her younger ruling was, let the state court proceedings go through, and then we'll see what happens. Remember, she didn't pitch it. She abstained it administratively, closed the case. Younger abstention didn't require me to, and even if it did, member Judge Gilman's answer, could I go back and mend the complaint? That's not the test for compulsory or permissive counterclaim in the state of Ohio. So even if that was the message being sent, it didn't require it to be converted from a compulsory to a permissive claim. And I also want to talk about the more. Why isn't a hip pocket thing what happened here? Why isn't it? Well, because I forgot, I got off my line because of Judge Moore's question. I'm sorry. I'm sorry, Judge Cooke. The reason it's not is because the restatement says the interest being protected to a litigant defending party are different. And that is, I should not be forced into the forum chosen by my advocate to file a counterclaim unless it's a compulsory counterclaim. Only if it meets that compulsory counterclaim test am I stuck with the forum he chose. If I choose to litigate my 1983 claims in federal court, I have that option if they're permissive counterclaims. That's what the restatement says. The interests being defined by the bringer of a claim versus the defender of a claim are altogether different. In the city of Harriman case, I know I'm out of time, but I need to go back. This is an NBank ruling from this court. The court- If you're citing us to that, we'll be fine. That we'll be, we'll take a look at the city of Harriman. I thank the court for its time and its attention to the case. Thank you both for your argument. The case will be submitted with the clerk call.